UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ROBERT R. V. MENDEZ and
BERNADETTE E. MENDEZ,
    Debtors.                                   No. 7-10-12748 SA

CHARLOTTE DIANE BLANDING,
    Plaintiff,
v.                                              Adv. No. 10-1121 S

Robert R. V. Mendez,
aka Robert Reynaldo Mendez,
aka Robert Valentine Mendez,
fdba Family Estates Management, LLC,
fdba House Buyers, LLC,
fdba Equity Holdings, LLC,
    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO SET ASIDE DEFAULT JUDGMENT (DOC 13)**

Defendant Robert Mendez' (Debtor) Motion to Set Aside Default Judgment (Motion) (doc 13) came before the Court for a hearing on the merits on February 3, 2011. Debtor represented himself and appeared in person together with his daughter Jessica Brandenburg to take notes; Plaintiff Charlotte Blanding appeared in person with her counsel Scott Turner. The Court heard the testimony of both Plaintiff and Debtor, considered the evidence at the close of Debtor's case, made findings of fact and conclusions of law orally on the record, and will deny the Motion.[1]

---

[1] The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and Administrative Order Misc. No. 84-0324 (D. N.M. March 19, 1992). The Court has personal jurisdiction over the parties. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This order contains findings of fact
(continued...)

**Background**

The CM file and the exhibits admitted into evidence at the final hearing show that Plaintiff obtained a judgment in the Second Judicial District Court, Bernalillo County, State of New Mexico, against Debtor for over $500,000. The liability portion of the judgment was based on Debtor's failure to comply with discovery demands, and resulted in a default judgment against him. It was because of this judgment that Debtor and his spouse filed for bankruptcy protection.

The judgment arose from two real estate contracts that Plaintiff and Debtor entered into, and the surrounding negotiations and representations. The first real estate contract was for a residence on Full Moon Avenue, in Albuquerque, New Mexico. The second, entered into years later when Plaintiff sought to move into a larger home, was for a residence on Brookline Avenue, Albuquerque, New Mexico.

The complaint in this adversary proceeding seeking to make the default judgment nondischargeable based on §523(a)(2)(A) and §523(a)(6) was filed timely on August 4, 2010 (doc 1), and the summons issued on August 5, 2010 (doc 2), requiring an answer by Tuesday, September 7 (taking into account that 30 days after the

---

[1](...continued)
and conclusions of law that are intended to duplicate and as applicable supplement the findings and conclusions announced orally on the record as permitted by Rule 7052, F.R.B.P.

Page 2 of 14

summons was issued was Saturday, September 4, and Monday, September 6, was Labor Day). No answer or other response was filed by September 7. The summons scheduled the initial pretrial conference for Monday, September 20, 2010, at 9.00 am. Neither Debtor nor anyone on his behalf attended that pretrial conference. On September 23, the Clerk entered the Certificate of Default (doc 7), and on September 29, at 10.59 am, the Court entered the default judgment. (Doc 8). On that same day, at 2.27 pm, Debtor filed his answer. (Doc 9). Also that same day, Plaintiff's counsel filed a certificate saying that he had served a copy of the judgment on Debtor that day. (Doc 10). On October 8, Debtor filed the Motion.

The Court conducted an almost day-long trial, which was comprised solely of Debtor's presentation of his case-in-chief. Debtor first called Plaintiff as an adverse witness, and then himself. Plaintiff's counsel did not cross examine either witness. At the conclusion of Debtor's case, the Court made oral findings of fact and conclusions of law and denied the Motion.

**Analysis**

Fed.R.Civ.P. 55(c) states **"Setting Aside a Default or a Default Judgment.** The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed.R.Civ.P. 60(b) states:

Page 3 of 14

Case 10-01121-s    Doc 26    Filed 02/11/11    Entered 02/11/11 11:49:10 Page 3 of 14

(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

The Tenth Circuit has stated that Rule 60(b) should be liberally construed when substantial justice will be served. <u>Jennings v. Rivers</u>, 394 F.3d 850, 856 (10th Cir. 2005).

> Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment .... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...." It "is an extraordinary procedure" which " 'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.' " <u>Cessna Fin. Corp.[v. Bielenberg Masonry Contracting, Inc.]</u>, 715 F.2d [1442] at 1444 [10th Cir. 1983)](quoting <u>Seven Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 401 (5th Cir.1981) (additional internal quotation marks omitted)).

<u>Id.</u>

The Tenth Circuit set out some rules for dealing with Rule 60(b) motions:

Under Rule 60(b), which standards Rule 55(c) invokes when a party is seeking relief from a default judgment, a court may set aside a final judgment "[o]n motion and upon such terms as are just." Fed.R.Civ.P. 60(b). The several reasons listed in the Rule include setting aside for: "mistake, inadvertence, surprise, or excusable neglect," id. at (b)(1), or for: "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Id. at (b)(3). It is also established that a movant must have a meritorious defense as well as a good reason to set aside the default. Greenwood Explorations, Ltd. [v. Merit Gas and Oil Corp., Inc.], 837 F.2d [423] at 427 [(10th Cir. 1988)]; Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1445 (10th Cir. 1983); [Olson v. Stone ( ) In re Stone ( )], 588 F.2d 1316, 1319 (10th Cir. 1978).

United States v. Timbers Preserve, Routt County, Colorado, 999 F.2d 452, 454 (10th Cir. 1993)(Footnote omitted).

> Courts have established three requirements which must be met when setting aside a default judgment under Rule 60(b): (1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment. See Meadows [v. Dominican Republic], 817 F.2d [517] at 521 [(9th Cir. 1987)]; INVST Fin. Group, Inc. v. Chem-Nuclear Systems, Inc., 815 F.2d 391, 398 (6th Cir.), cert. denied, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); 6 [James W.] Moore, [Moore's Federal Practice] supra, ¶ 55.10[1] [(2d ed. 1992)]. The Second Circuit considers the first factor in terms of whether the default was willful. Wagstaff-El v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990), cert. denied, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991); Davis [v. Musler], 713 F.2d [907] at 915 [(2nd Cir. 1983)]. Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default. 6 Moore, supra, ¶ 55.10[1]; see also Meadows, 817 F.2d at 521 (receiving actual notice and failing to respond is culpable conduct).

Id.

> The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co.[ v. Brunswick Assoc. Ltd. P'ship], 507 U.S. [380] at 395, 113 S.Ct. 1489 [(1993)] (discussing application of the excusable neglect standard of Fed. R. Bankr.P. 9006(b)(1)). Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. "'[F]ault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable.'" United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting City of Chanute v. Williams Natural Gas Co., 31 F.3d 1041, 1046 (10th Cir. 1994)).

Jennings, 394 F.3d at 856-57. Finally, the Tenth Circuit has ruled that default judgments are "a harsh sanction" and that there is a strong policy favoring resolution of disputes on their merits. Ruplinger v. Rains (In re Rains), 946 F.2d 731, 732 (10th Cir. 1991). Because it is such a harsh sanction, due process requires that the default be the result of willfulness, bad faith, or fault. Id. at 733. Default judgments deprive a litigant his or her day in court and are appropriate only where a lesser sanction would not serve the interest of justice. Id. (Citation omitted.)

Under Timbers Preserve, Routt County, 999 F.2d at 454, Debtor must establish three conditions to set aside the default judgment: (1) his culpable conduct did not cause the default; (2)

he has a meritorious defense; and (3) Plaintiff will not be prejudiced by setting aside the judgment.

**Prejudice**

At the outset of the hearing, the Court found, based on the papers filed by Plaintiff, that there was no cognizable prejudice to Plaintiff were the Court to set aside the default judgment. That was because the only prejudice that Plaintiff cited was the cost, in dollars and emotional demands, of having pursued relief against Debtor this far and of having to complete the process by a trial on the merits. Depriving Plaintiff of the "windfall" of not having to complete the trial process, see Sun v. Board of Trustees of the University of Illinois, 473 F.3d 799, 811-12 (7th Cir.), cert. denied, 551 U.S. 1114 (2007), does not constitute the sort of prejudice that would preclude setting aside the default judgment. On the other hand, the Court finds that Debtor has not provided a sufficient excuse for not having responded to the complaint in a timely fashion or for not having attended the initial pretrial conference, and that Debtor has not established a defense on the merits. Thus, despite the strong preference for a resolution on the merits, this is one of the perhaps few cases where that preference must be disregarded.

**Mistake, Inadvertence, Surprise, or Excusable Neglect**

Debtor recited in his testimony and the Motion that when he first met with his bankruptcy counsel (Counsel), he told Counsel

that there would definitely be a dischargeability complaint filed by Plaintiff, and that Counsel said he would represent him in that matter.  Debtor did not describe what financial arrangements if any were discussed; given that Debtor's previous non-bankruptcy representations were severely hampered by lack of funds, the question arises whether Debtor had a legitimate expectation that Counsel would undertake this potentially complicated representation when Debtor would be unable to pay.

Debtor stated that Counsel sent him by e-mail scanned copies of the complaint and summons about two weeks before the answer was due.  Debtor did not testify that he did not receive the documents directly shortly after they were served.  (Debtor has not alleged a lack of service, or of timely service, of the complaint and summons on him directly.)

In the meantime, on August 24, two weeks before the answer was due, (bankruptcy) Counsel had e-mailed Debtor and his spouse that Counsel had been seriously ill and would not be able to represent Debtor in the adversary proceeding.  This was Debtor's testimony, and is verified by a copy of the e-mail attached to the Motion.

Thus, Debtor knew two weeks before the due date of the answer and almost exactly four weeks before the initial pretrial conference on September 20 that he would not have the services of Counsel (assuming he would otherwise have had them).  Yet he did

not seek an extension of time to file a response, or obtain other counsel, within the two-week period before the deadline for answering the complaint, or within the almost four-week period before the initial pretrial conference, nor within the one-week period following the initial pretrial conference.  This, despite the fact that, as Debtor testified during the hearing, Mr. Turner, as counsel for Plaintiff or another party, had obtained a total of three default judgments against him before this one, and despite the fact that Debtor and his spouse had previously experienced considerable difficulty finding competent counsel to represent them in the prebankruptcy litigation with Mr. Turner's clients due to a lack of funds.

    Debtor also testified, and put in the Motion, that he suffered from ADD (attention deficit disorder) and ADHD (attention deficit hyperactivity disorder) such that he is prone to procrastination, and deals very poorly with paperwork and deadlines.  That may well be, and of course ADD and ADHD are serious conditions, the consequences of which are not to be minimized.  Nevertheless Debtor by now should be prepared to deal with that affliction when Debtor has found himself repeatedly immersed in litigation arising from a series of complicated real estate transactions of Debtor's own engineering.

    In a related vein, Debtor testified that all the paperwork in the family, including the records of the real estate

transactions, was handled by his spouse and co-debtor Bernadette Mendez. Unfortunately she suffered a major stroke about one and half years ago. Thus she was available to work on the various state court litigations in which she and Debtor were embroiled (thus raising the question about whether those defaults in fact did not arise from the underlying fact that Debtor had no real defenses to the claims in those litigations), but was not available when this adversary proceeding was filed. Again, without in any way minimizing the massive toll that such an event takes not just on the victim of the stroke but also on the victim's family, the fact is that Debtor had a year after that terrible event to adjust and prepare for the litigation that he foresaw. Apparently he did not do so.

Finally, Debtor testified that he obtained some advice from an attorney about how to answer a complaint, and that resulted in the answer that was filed, and that subsequently he went on the internet to find out how to prepare the motion to set aside the default judgment which he filed. Given all his litigation experience in state court, and how evidently intelligent Debtor is, it is hard to imagine that he needed much instruction in how to file an answer to a complaint. Similarly his ability to put together the Motion as competently as he did belies any notion that he was incapable of representing his own interests adequately in writing. Overall Debtor's conduct is an

illustration of "culpable" conduct that is not excusable. See Meadows, 817 F.2d at 521 (receiving actual notice and failing to respond is culpable conduct).

**Lack of a Meritorious Defense**

The standard for judging whether a party has a meritorious defense is whether the defense stated would, if proved, constitute a defense to the claim asserted in the adversary complaint. See, e.g., Indigo America, Inc. v. Big Impressions, LLC, 597 F.3d 1, 4 (1st Cir. 2010)("The party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.")(Citation omitted.) See also 10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2697 (3d ed.) ("The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.")(Footnote omitted.)

In this instance, Debtor's answer to the complaint admitted or denied, and sometimes commented on, all the allegations of the adversary proceeding complaint, doc 10, and that answer denied liability clearly. However, in this adversary proceeding there was much more information available to aid the Court in deciding whether Debtor had a meritorious defense. And that information was presented to the Court upon the consent of both parties and the Court.

To begin with, this is not a matter in which Debtor has never had his day in court. The trial exhibits, virtually all of which were offered independently by both sides, set out the lengthy proceedings that took place in the state court. The final judgment from the state court sets out both the basis for the default judgment against Debtor (based on the failure to cooperate in discovery) and the award of compensatory and punitive damages. Plaintiff exhibit 2 to exhibit C and Debtor exhibit C to exhibit 2.

In addition, the Court had before it the testimony of both Plaintiff and Debtor about the merits of the complaint against Debtor, and much of the documentation that reflected the arrangements between the two of them including copies of the real estate contracts. The testimony and the documents were consistent with, and provided an independent basis for agreeing with the result of, the state court judgment rendered against Debtor for defrauding and for wilfully and maliciously damaging Plaintiff.[2] As only one example, the Full Moon real estate

---

[2] In the state court action upon which this adversary proceeding is based, Debtor participated fully, albeit negatively, by not cooperating with discovery. Debtor explained at some length that the lack of cooperation arose from a combination of incompetent counsel, a judge who refused to listen to or understand arguments that distinguished among the various defendants for which he was responsible for responding to discovery, and his own inability to timely organize discovery responses. The Court finds that Debtor's explanations are not credible, and that a vigorous effort to comply with the discovery
(continued...)

Page 12 of 14

Case 10-01121-s   Doc 26   Filed 02/11/11   Entered 02/11/11 11:49:10 Page 12 of 14

contract and related due-on-sale "disclosures" had provisions that made it a default on Plaintiff's part to disclose to the underlying mortgage holder Bank of America that Plaintiff was purchasing the property, to record the real estate contract, or to even acknowledge that Plaintiff was residing in the Full Moon property should a Bank of America representative appear and ask questions. Thus the Court had the opportunity to examine fully whether Debtor had available a meritorious defense, and concludes that he did not.[3]

---

[2](...continued)
demands would have avoided the sanction of the default judgment, though it may well have led to a judgment against him on the merits in any event.

[3] A question raised by these proceedings but which the Court need not answer is whether, in deciding the meritorious defense issue, the Court could consider whether a New Mexico state court judgment, awarded on the basis of misconduct (e.g., failure to cooperate in discovery), would provide the factual basis for the application of collateral estoppel or issue preclusion, as permitted (in the appropriate circumstances) by Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). In this adversary proceeding, that would entail considering under what circumstances a state-court default judgment might be entitled to collateral estoppel effect. So far, the answer to that question has been in the negative. Blea v. Sandoval, 107 N.M. 554, 558, 761 P.2d 432, 436 (Ct. App.), cert. denied, 107 N.M. 413, 759 P.2d 200 (1988) ("In New Mexico, we recognize that default judgments do not have collateral estoppel effect in future litigation, although they may have res judicata effect."). Compare, for example, Harris v. Appleberry (In re Appleberry), Adv. No. 06-1090 (Memorandum Opinion and Order, Bankr. D. N.M., Sept. 1, 2006) (Bankruptcy court declined to apply collateral estoppel when debtor had default judgment assessed against him in state court for failure to cooperate with discovery) with McCart v. Jordana (In re Jordana), 232 B.R. 469 (10th Cir. BAP 1999), aff'd 216 F.3d 1087, 2000 WL 783401 (10th Cir.)(unpublished)(failure of

(continued...)

**Conclusion and Order**

The foregoing makes clear that Debtor was not only culpable in not timely responding to the complaint in this adversary proceeding and in failing to appear for the initial pretrial conference, but also that Debtor does not have a defense on the merits.

**IT IS THEREFORE ORDERED** that Debtor's Motion to Set Aside Default Judgment (doc 13) is denied.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  February 11, 2011

Copies to:

Scott E Turner
The Turner Law Firm, LLC
500 Marquette Ave., N.W. Suite 1480
Albuquerque, NM 87102-5325

Robert R. V. Mendez
5632 Drake Ave. NW
Albuquerque, NM 87114

---

[3](...continued)
defendant/debtor to respond to discovery in federal securities fraud action and absconding with originals of transcripts leading to sanction of default judgment permitted application of collateral estoppel in subsequent nondischargeability action). The Court has not found any New Mexico case after Blea v. Sandoval which discusses the application or not of collateral estoppel in the face of this sort of default. Were the issue to arise again, a certification to the New Mexico Supreme Court by the United States District Court might be appropriate.